UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DARYLL GRAY, III,

    Defendant.
_____/

Case No. 23-20546

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO DISMISS [22]**

Defendant Daryll Gray, III, is charged in a superseding indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 1) and illegal possession of a machinegun in violation of 18 U.S.C. § 922(o) (Count 2). (ECF No. 17.) The matter is before the Court on Defendant's motion to dismiss. (ECF No. 22.) In his motion, Defendant argues that § 922(g)(1) and § 922(o) violate the Second Amendment's plain text under the framework set forth in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).[1] The government filed a response opposing the motion. (ECF No. 24.) After holding a hearing, the Court held the motion in abeyance pending a ruling on the constitutionality of § 922(g)(1) from the Sixth Circuit Court of Appeals. After the issuance of *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), the parties filed supplemental briefs,[2] (ECF Nos. 29, 30), and the Court held another hearing. For the reasons below, the Court DENIES Defendant's motion.

---

[1] Defendant also raises an as-applied challenge to § 922(o) in his motion.
[2] Defendant raises an as-applied challenge to § 922(g)(1) in his supplemental brief.

1

I.      **Legal Framework**

In *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), the Supreme Court held that the Second Amendment codified a pre-existing "individual right." This right protects the ability to keep, for "lawful purposes," the kinds of weapons in common use, like those used for self-defense. *Id.* at 624-25. Following *Heller*, courts of appeals developed a two-step means-end test when considering the constitutionality of firearm regulations. *See Bruen*, 597 U.S. at 18. Under that test, courts would ask whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood. *See id.* If the answer is yes or is unclear, the second step would to be to apply the appropriate level of scrutiny to assess the strength of the government's justification for regulating the exercise of the right. *Id.* at 18-19.

In *Bruen*, the Supreme Court rejected the means-end framework, stating that it involved "one step too many," and set forth a new text-and-history test. *Id.* at 19. Under this test, courts must first ask whether the plain text of the Second Amendment covers an individual's conduct—in other words, whether the individual is among "the people" as used in the Second Amendment. *Id.* at 24, 31-32. If the answer to that question is yes, "the Constitution presumptively protects that conduct" and the regulation is not constitutional simply because it promotes an important interest. *Id.* at 17. Instead, the government must affirmatively prove "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

Even though *Bruen* overturned the framework courts had developed based on *Heller*, some courts continued to reject as-applied constitutional challenges to § 922(g)(1) by relying on the dicta in *Heller*, 554 U.S. at 626, stating that "nothing in our opinion should

be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *See, e.g.*, *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024). The Sixth Circuit, however, recently disagreed, finding that it must abide by "*Bruen*'s mandate to consult historical analogs." *See Williams*, 113 F.4th at 648. After applying the text-and-history test, the court concluded "that § 922(g)(1) is constitutional on its face and as applied to dangerous people." *See id.* at 662-63. In an as-applied challenge, the burden rests on the defendant to show that he is not dangerous. *Id.* at 662.

The *Williams* court noted that criminal offenses can be divided into three categories. *Id.* at 663. The first category encompasses "crime[s] against the body of another human being, including (but not limited to) murder, rape, assault, and robbery." *Id.* The second category involves "crime[s] that inherently pose[] a significant threat of danger, including (but not limited to) drug trafficking and burglary." *Id.* "An individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous." *Id.* The third and "more difficult category involves crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements." *Id.* The court stated that "many of these crimes don't make a person dangerous." *Id.* at 659.

When making a finding regarding dangerousness, courts "must focus on each individual's specific characteristics," and in doing so, "may consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction" "as well as other judicially noticeable information." *See id.* at 657-660. The *Williams* court "recognize[d] that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness" but left "the question of what information is relevant for another day." *Id.* at 658 n.12.

3

## II. Relevant Background

The underlying complaint in this case indicates that upon being stopped by police, Defendant fled while in possession of a handgun equipped with a machinegun conversion device. (ECF No. 1.) Defendant threw the gun into the street during the foot pursuit.

In 2015, Defendant had pled guilty to a reduced charge of attempted possession of less than 25 grams of a controlled substance in state court. He was sentenced to seven days in jail and one year of probation under Michigan's Holmes Youthful Trainee Act ("HYTA"). According to the presentence investigation report prepared by the Michigan Department of Corrections, at the time of his arrest, officers found three baggies of cocaine on his person, another ten baggies of marijuana on a table on the first floor of the house, and a 12-gauge shotgun behind the front door.

In 2017, Defendant was indicted in Ohio with two counts of possession of drugs and one count of drug trafficking. Pursuant to a plea agreement, he pled guilty to possession of heroin, and, in exchange, the other charges were dismissed. Defendant was sentenced to three years of probation. Later, after violating his probation, he was sentenced to eight months in prison. The pre-sentence investigation report prepared in that case states that Defendant denied ever using drugs and admitted that he sold drugs.

## III. Analysis

Defendant's facial challenge to § 922(g)(1) is foreclosed by *Williams*.[3] Thus, the Court addresses only his as-applied challenge to that statute along with his arguments regarding § 922(o).

---

[3] Defendant argues that *Williams* creates two due process problems. Because *Williams* is binding on this Court, there is no need to consider those arguments.

4

### A. As-Applied Constitutional Challenge to Section 922(g)(1)

Defendant argues that he is not dangerous. He states that his prior convictions fall within the third category described in *Williams*. The government notes that the underlying facts of Defendant's convictions suggest he was involved in drug trafficking, which is listed within the second category. But Defendant argues that the information in an out-of-state pre-sentence report is not judicially noticeable.

True, Defendant's prior offenses of attempted possession and possession of controlled substances do not fit precisely within the contours of the second category described by the *Williams* court, but they are more analogous to the crimes in that category than to those in the third category, which are "crimes that pose *no* threat of physical danger, like mail fraud, tax fraud, or making false statements." See *Williams*, 113 F.4th at 663 (emphasis added). And regardless of which category Defendant's offenses fall within, the burden to prove non-dangerousness remains with him. *See id.* at 659. The Court need not consider the information in the pre-sentence report to find that Defendant has not met his burden here. It is undisputed that Defendant pled guilty to possession of heroin, which is a "dangerous, and potentially lethal, controlled substance[]." See *United States v. Morales-Medina*, No. 3:16-cr-00039, 2021 U.S. Dist. LEXIS 90270, at *16 (S.D. Ohio May 12, 2021) (citations omitted); *see also Titan Indem. Co. v. Cameron*, 77 F. App'x 91, 96 (3d Cir. 2003) (describing heroin as "a dangerous drug that creates the risk of death"). Defendant was given a sentence of probation but violated his probation, leading to a custodial sentence. And that was Defendant's second drug-related offense, showing that he was undeterred following a previous charge for which he received the benefits of

5

the HYTA.[4] While Defendant's criminal history is not as extensive as others may have, it is sufficient to show repeated behavior relating to controlled substances that leads to a finding of dangerousness.[5] In fact, the pretrial services officer assigned to supervise Defendant in this case recently filed a "Petition for Action on Conditions of Pretrial Release" due to Defendant's use of marijuana. (ECF No. 34.) The petition indicates that Defendant admitted to consistently engaging in marijuana use and stated he has no desire to stop even though it violates his bond conditions.[6] The Court held a hearing and Defendant did not object to the contents of the petition.

In sum, the Court finds that Defendant has not met his burden of showing that he is not dangerous. Section 922(g)(1) is, therefore, constitutional as applied to him.

---

[4] Defendant notes that upon successful completion of a term of supervision under HYTA, the person does not receive a conviction. Defendant argues that because the offense did not deprive him of his right to possess a firearm, it should not be considered. But Defendant does not cite any authority in support of this notion. And the Court finds that a previous HYTA adjudication is relevant to the analysis here.

[5] In this case, Defendant was caught with a dangerous weapon and fled from police on foot, throwing down the weapon. While the Court need not rely on these facts, they also support a finding of dangerousness. *See United States v. Vaughn*, No. 23-5790, 2024 U.S. App. LEXIS 27730, at *6 n.2 (6th Cir. Oct. 30, 2024) (noting "[t]he fact that [the defendant]'s § 922(g)(1) conviction resulted from an incident where he shot at an individual would lend to a showing of his dangerousness" but finding that the defendant's criminal convictions were sufficient to resolve the case).

[6] Defendant notes that he has been on bond during the duration of this case. Not only has he recently violated his bond conditions, but also, as one court in this district recently reasoned, "[a]n evaluation of dangerousness to decide whether to *detain* someone before trial involves considerations that are different from the ones to decide whether to *restrict* firearm possession for an individual convicted of a felony," including the fact that "there is a presumption in the Bail Reform Act *against* pretrial detention, as opposed to a presumption *in favor* of restricting firearm possession for individuals convicted of dangerous or violent felonies or eligible misdemeanors under § 922(g)(1)." *See United States v. Jennings*, No. 2:24-CR-20173, 2024 U.S. Dist. LEXIS 194898, at *16 (E.D. Mich. Oct. 24, 2024) (citations omitted).

### B. Constitutional Challenges to Section 922(o)

Defendant argues that following *Bruen*, § 922(o) is unconstitutional both facially and as applied to him because it criminalizes the possession of firearms "in common use" for the purpose of self-defense. The government argues that § 922(o) does not implicate Defendant's right to bear arms under the Second Amendment.

In a post-*Heller* challenge to § 922(o), the Sixth Circuit stated that "whatever the individual right to keep and bear arms might entail, it does not authorize an unlicensed individual to possess unregistered machine guns for personal use." *See Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009). Because the Second Amendment applies to the type of weapons that were "in common use at the time," which did not include machineguns, courts in this circuit have found that *Bruen* did not disturb the finding in *Hamblen*. *See, e.g.*, *United States v. Johnson*, No. 24-20429, 2024 U.S. Dist. LEXIS 204388, at *15-16 (E.D. Mich. Nov. 8, 2024) (citing cases). Because Defendant cannot get past the first step of the *Bruen* test with regard to § 922(o), there is no need to proceed to the second step of the analysis and his constitutional challenges to Count 2 fail.

## IV. Conclusion

For the reasons above, Defendant's motion to dismiss is DENIED.

SO ORDERED.

                                    s/Nancy G. Edmunds
                                    Nancy G. Edmunds
                                    United States District Judge

Dated: December 10, 2024